UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NEW LIFE OUTREACH MINISTRY,
INC., and JOHN DOES ONE (1)
THROUGH SIX (6) (As Residents or
Prospective Residents of 4606/4620
South Pipkin Road, Lakeland, Florida),

                Plaintiffs,

v.                                CASE NO. 8:06-CV-1547-T-27MAP

POLK COUNTY, a political subdivision
of the State of Florida,

                Defendant.
_____/

## REPORT AND RECOMMENDATION

      This is an action under the Fair Housing Act, as amended by the Fair Housing Amendments ("FHAA") (42 U.S.C. §§ 3604, 3613), for intentional discrimination and failure to make a reasonable accommodation (doc. 1). New Life Outreach Ministry, Inc. ("New Life"), owns and operates a permanent housing facility in Polk County for the homeless and certifiably disable. Together with John Does One through Six (six of the home's residents), New Life claims that Polk County, through its Board of County Commissioners, unlawfully and intentionally prevented it from operating a permanent home on its property due to the residents' histories of chronic substance abuse or addiction. Accordingly, they seek damages and a permanent injunction preventing Polk County from interfering with the use and occupation of New Life's permanent home. Polk County now moves to dismiss the case per FED. R. CIV. P. 12(b)(1) for lack of subject matter jurisdiction contending the matter is not ripe adjudication

because New Life has not sought a variance. After consideration, I find New Life has exhausted all available remedies because any further efforts in seeking a variance would be futile.[1]

### A. Standard of Review

Attacks on subject matter jurisdiction under FED. R. CIV. P. 12(b)(1) come in two forms, facial and factual. *Lawrence v. Dunbar,* 919 F.2d 1525, 1528-29 (11th Cir. 1990)  Facial attacks simply require the court to take the allegations of the complaint as true and determine if the plaintiff has sufficiently plead a basis for subject matter jurisdiction. *Id*. at 1529.  However, when faced with a factual challenge, which goes to the court's very power to hear the case, the court can weigh the evidence and satisfy itself as to the existence of jurisdiction. *Id*.  In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *Id.*

### B. Background

New Life is a non-profit Florida corporation that provides charitable services in Polk County, Florida. Through various programs, New Life provides shelter, treatment, and training to the homeless and certifiably disabled, which includes individuals recovering from drug or alcohol addiction.[2] *See* 42 U.S.C. § 3602(h). In 2003, New Life began searching for property and funding to open a permanent housing facility for its eligible clients (those who are not currently using drugs or alcohol, have not come directly out of prison, are not a direct threat to

---

[1] The district judge referred this motion to me for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 6.01 (doc. 35).

[2] It is well established that individuals recovering from drug or alcohol addiction are covered under the FHA. *See Elliott v. City of Athens, Ga.*, 960 F.2d 975, 977 (11th Cir.1992).

the safety or property of others, and are not classified as a sexual predator/offender/pedophile) (doc. 1, ¶ 10). As part of that effort, New Life submitted a grant application to the Federal Department of Housing and Urban Development ("HUD") and employed the services of a licensed realtor. In 2004, New Life purchased the current property from Christian Rest Care, Inc. Notably, that facility had operated continuously since the 1960s housing the elderly and at times the non-elderly who were certifiably disabled or handicapped from substance abuse or mental illness (doc. 1 at ¶ 11).

Before securing grants from HUD, New Life questioned Polk County officials about the available uses for the property. In November 2004 letter, a Polk County Senior Planner wrote New Life confirming "the use of the property as a group living facility is a permitted use and would require no further approval from Polk County." *See* doc. 27-2 (ex. 5). In other words, despite the facility's location in a residential area, zoning officials considered the facility to be a non-conforming use under Section 110.C.2 of Polk County's Land Development Code ("LDC") given its continuous operation over the years (doc. 27-2, p. 2). Aware that under the LDC the facility's non-conforming use would lapse if it ceased for more than twelve consecutive months, New Life housed six residents at the home from March to July 2005 (doc. 1, p. 6). Later, New Life removed these residents for six to seven months so that portions of the permanent home could be refurbished and renovated.

In April 2006, a citizen questioned Polk County officials about the property's use. Upon inquiry, Mark Cunningham, the Director of Polk County's Land Development Division, determined that New Life had complied with the LDC (doc. 27-2, p. 3). Shortly thereafter, the same resident appealed the determination to the Polk County Board of County Commissioners.

After two public hearings (June 21, 2006 and July 26, 2006), the Board overturned the administrative decision finding New Life's use of the property in 2005 did not constitute a continuing non-conforming use.  Although the board based its decision on an interpretation of the LDC, several commissioners publicly stated they would not issue New Life a variance in the future.  For example, Commissioner Wilkinson remarked: "[the information from the hearing] really sends some – I get chills up my spine as far as the health, safety, and welfare situation" (doc. 32-3, p. 3).  Likewise, Commissioner English agreed with neighborhood concerns: "the people who are going to be housed in the new rehab home have a history of drug addiction and maybe some of them even have a criminal history" (doc. 32-3, p. 9).  "If New Life came to me today, or our board today, and were applying for a new conditional use or they were applying for a land use change, I would deny them that change of that use.  Because I believe that the home is not appropriate for the location it's presently being designed for" (doc. 32-3, p. 10).  "[I]f I voted in favor of them, I would have to apologize to the community and the neighborhood in that area.  And I don't want to do that." (doc. 32-3, p. 12).  Commissioner Senft added: "[t]his organization does a great job and great work.  And I support it 100 percent in another location" (doc. 32-3, p. 6).  Given these comments, New Life filed this suit rather than apply for a variance (their only option under the LDC).  Polk County, in turn, claims New Life must apply for a variance before its FHAA claims are ripe for adjudication.

    *C.  Discussion*

    Under the ripeness doctrine, a plaintiff must satisfy the "final decision" hurdle; namely, the plaintiff must demonstrate that the decision maker "charged with implementing the regulations has reached a final decision regarding the application of the regulations to the

property at issue." *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 191 (1985).  In *Williamson County*, a Just Compensation Clause case, the Supreme Court held that although the planning commission's refusal to approve the plaintiff's preliminary plat prevented the plaintiff from developing the land, it was not a complete taking because it left open the possibility of development after obtaining a variance. *Id*. at 193-94.  The Court reasoned that since the refusal of the preliminary plat was not conclusive as to whether the plaintiff would be denied all reasonable use of the property, it was not a final, reviewable decision.  *Id.* at 194.  The Eleventh Circuit applies *Williamson County's* reasoning in Just Compensation Clause cases.  *See Reahard v. Lee County*, 30 F.3d 1412, 1415 (11th Cir. 1994), *cert. denied*, 514 U.S. 1064 (1995) (holding that in most cases, no "final decision" has been reached until an aggrieved landowner has applied for at least one variance to a contested zoning ordinance); *see also Resolution Trust Corp. v. Town of Highland Beach*, 18 F.3d 1536, 1547 (11th Cir. 1994) (holding that in most instances a property owner must apply for a variance).  But the circuit has not ruled if *Williamson County's* final decision rule strictly applies to FHA/FHAA claims.  *See Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1541 n. 16 (11th Cir. 1994) (expressly not deciding the ripeness doctrine's application in FHA claims).  And the remaining circuits that have addressed the issue are split.

The Seventh and Eighth Circuits strictly apply the "final decision" rule of *Williamson County* to reasonable accommodation claims brought by plaintiffs who do not seek a variance before filing a claim.  *See Oxford House-C v. City of St. Louis*, 77 F.3d 249 (8th Cir. 1995); *U.S. v. Village of Palatine, Ill*., 37 F.3d 1230, 1233 (7th Cir. 1994).  Yet, even the Seventh Circuit recognizes an exception to the ripeness doctrine applied in Just Compensation Clause cases –

futility. *See Palazzolo v. Rhode Island*, 533 U.S. 606, 622 (2001) (holding in a takings case that the "[r]ipeness doctrine does not require a landowner to submit applications for their own sake"); *Village of Palatine, Ill.*, 37 F.3d at 1234.[3] The Fourth and the Fifth Circuits distinguish FHA/FHAA claims from takings claims and hold that the "final decision" rule does not apply. *See Bryant Woods Inn, Inc., v. Howard County, Md.*, 124 F.3d 597, 602 (4th Cir. 1997); *Groome Resources Ltd., L.L.C. v. Parish of Jefferson*, 234 F.3d 192 (5th Cir. 2000). These courts recognize injuries under the FHA/FHAA are sufficiently concrete for judicial resolution once the disabled resident is first denied a reasonable accommodation. *Bryant Woods Inn, Inc.,* 124 F.3d at 602.

Deciding whether an FHAA claim is sufficiently concrete for judicial resolution once the resident is denied a reasonable accommodation is frankly unnecessary. Irrespective of the split in the circuits, even those circuits strictly applying *Williamson County's* "final decision rule" recognize the futility exception. And it would be futile for New Life to apply for a variance. The fate of any variance ultimately rests with the same commissioners who reversed the administrative determination approving New Life's anticipated use. Their public comments make it highly unlikely they would change their stance and approve New Life's variance. *See also Schwarz v. City of Treasure Island*, 2006 WL 2521399 (M.D. Fla. Aug. 1, 2006) (applying the futility exception to an FHA claim); *Open Homes Fellowship, Inc. v. Orange County, Fla.*, 325 F. Supp. 2d 1349 (M.D. Fla. 2004) (allowing a claim to proceed before exhausting all administrative remedies when it was clear the process down the administrative road would be a

---

[3] The Eighth Circuit in *Oxford House-C* impliedly recognized this exception but refused to apply it because the board of adjustments had a record of granting variances despite the objections of aldermen and neighbors. 77 F.3d at 252.

waste of time and money).

*D. Conclusion*

For the above reasons, it is

RECOMMENDED:

1. Motion of Defendant to Dismiss (doc. 27) be DENIED.

IT IS SO REPORTED at Tampa, Florida on February 13, 2007.

_____
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date it is served on the parties shall bar an aggrieved party from a de novo determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon ground of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainright*, 677 F.2d 404 (5th Cir. 1982)(en banc).

cc:   Hon. James D. Whittemore
      Counsel of Record